# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ ALLEGHENY _____ County

| For Prothonotary Use Only: |
| --- |
| Docket No: |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| Equipment Corporation of America | Moncon, Inc. |

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No        **Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: _Danny P. Cerrone Jr._

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- _____
- ☒ Other: Breach of Contract
- _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

**Exhibit 1**

*Updated 1/1/2011*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

EQUIPMENT CORPORATION OF
AMERICA,

        Plaintiff,

    v.

MONCON, INC., ACCIDENT FUND
INSURANCE CO. OF AMERICA,
NEW YORK STATE INSURANCE
FUND and ASPEN AMERICAN
INSURANCE COMPANY,

        Defendants.

CIVIL DIVISION

CASE NO. GD-23-

**COMPLAINT IN
CIVIL ACTION**

Filed on Behalf of Plaintiff,
Equipment Corporation of America

Counsel of Record for this Party:

Danny P. Cerrone, Jr., Esquire
Pa. I.D. No. 201091

Stephen M. Wolf, Esquire
Pa. I.D. No. 321070

CLARK HILL PLC
Firm I.D. No. 282
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
(412) 394-7711

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

EQUIPMENT CORPORATION OF
AMERICA,

        Plaintiff,

    v.

MONCON, INC., ACCIDENT FUND
INSURANCE CO. OF AMERICA,
NEW YORK STATE INSURANCE
FUND and ASPEN AMERICAN
INSURANCE COMPANY,

        Defendants.

CIVIL DIVISION

CASE NO.

## <u>NOTICE TO DEFEND</u>

    You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

    IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY-COUNTY BUILDING
PITTSBURGH, PA 15219
TELEPHONE: (412) 261-2088

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

EQUIPMENT CORPORATION OF
AMERICA,

               Plaintiff,

      v.

MONCON, INC., ACCIDENT FUND
INSURANCE CO. OF AMERICA,
NEW YORK STATE INSURANCE
FUND and ASPEN AMERICAN
INSURANCE COMPANY,

               Defendants.

CIVIL DIVISION

CASE NO.

## COMPLAINT IN CIVIL ACTION

Plaintiff, Equipment Corporation of America ("ECA"), by and through its attorneys, presents this Complaint in Civil Action and in support thereof avers the following:

### THE PARTIES

1.     Plaintiff, ECA, is a Delaware corporation with a place of business located at 100 Station Street, P.O. Box 306, Coraopolis, Pennsylvania 15108.

2.     Defendant, Moncon, Inc. ("Moncon"), is a New York corporation with business address at 13 Fullerton Avenue, Yonkers, New York 10704.

3.     Defendant, Accident Insurance Co. of America, is a Delaware corporation with a business address at 200 N. Grand Avenue, P.O. Box 40790, Lansing, Michigan 48901.

4.     Defendant, New York State Insurance Fund, is a New York corporation with a business address at P.O. Box 66699, Albany, New York 12206.

5.     Defendant, Aspen American Insurance Company, is a Tennessee corporation with a business address at 499 Washington Boulevard, Jersey City, New Jersey 07310.

## JURISDICTION AND VENUE

6.      Pursuant to Paragraph 19 of the Terms and Conditions of the Lease Agreement that Moncon entered into with ECA, this Court has jurisdiction over Moncon and venue is appropriate in Allegheny County, Pennsylvania because "all actions or proceedings arising directly or indirectly from this Lease Agreement shall be litigated only in courts (state or federal) having situs in the Commonwealth of Pennsylvania and the County of Allegheny" and Moncon "consents in advance to such jurisdiction in any action or proceeding commenced by [ECA] in any state or federal court located within the Commonwealth of Pennsylvania."  A copy of Lease Agreement between ECA and Moncon is attached hereto and incorporated herein as Exhibit A.

7.      This Court has jurisdiction over Accident Insurance Co. of America, New York State Insurance Fund, and Aspen American Insurance Company and venue is appropriate in Allegheny County, Pennsylvania inasmuch as certain events giving rise to this cause of action took place therein and Accident Insurance Co. of America, New York State Insurance Fund and Aspen American Insurance Company conduct business in Allegheny County, Pennsylvania.

## FACTUAL BACKGROUND

8.      On January 11, 2023, Moncon and ECA entered into a Lease Agreement whereby ECA agreed to furnish a Bauer Drill Rig, Bauer KDK Rotary and Bauer Kelly Bar and related materials and components (the "Equipment") for Moncon's use on a construction project.  *See* Exhibit A.

9.      Pursuant to the Lease Agreement, Moncon agreed to pay a monthly rental cost for the Equipment in the amount of $34,650.00, plus the applicable tax and costs related to the possession, registration, licensing, transportation, maintenance, repair, storage, use or operation of the Equipment.  *See* Exhibit A.

2

10.     Pursuant to the Lease Agreement, Moncon agreed, at its sole cost and expense, to maintain the Equipment in as good condition as delivered. *See* Exhibit A at ¶7.

11.     Pursuant to the Lease Agreement, Moncon agreed to reimburse ECA for any repairs, other than ordinary wear and tear incident to normal and intended use, that ECA undertook on the Equipment. *See* Exhibit A at ¶¶5, 7, 8 and 10.

12.     ECA furnished the Equipment to Moncon without complaint or issue for Moncon's use on the construction project.

13.     ECA invoiced Moncon pursuant to the parties' Lease Agreement. Copies of ECA's unpaid invoices are attached hereto and incorporated herein under Exhibit B.

14.     Despite providing the Equipment for Moncon's use on the construction project, Moncon failed to pay ECA on all of the invoices submitted.

15.     ECA has demanded payment from Moncon for the outstanding amounts due and owing, but Moncon has failed to make payment to ECA.

16.     Pursuant to Paragraph 13 of the Lease Agreement, Moncon agreed to pay, as a late charge, an amount equal to one and a half percent (1.5%) per month for all rental payments past due in excess of thirty (30) days. *See* Exhibit A.

17.     Pursuant to Paragraph 11 of the Lease Agreement, Moncon agreed to pay any and all losses, claims, demands, costs and expenses (including legal expenses) of every kind and nature arising out of or connected with the use of ECA's equipment. *See* Exhibit A.

18.     Despite ECA's performance of its contractual obligations under the Lease Agreement in a good and workmanlike manner, Moncon has failed to pay the balance due and owed to ECA.

CLARKHILL\70503\464392\273374560.v2-10/3/23

19.     All conditions precedent to the filing of this action have either been satisfied or have been waived by the Defendants.

## COUNT I
## BREACH OF CONTRACT
### (ECA v. Moncon)

20.     The averments contained in the above Paragraphs are incorporated herein by reference as if set forth in full.

21.     The Lease Agreement entered into between ECA and Moncon created an enforceable agreement.  *See* Exhibit A.

22.     ECA provided the Equipment to Moncon for use of the construction project.

23.     In the course of Moncon's operation of the Equipment on the construction project, Moncon caused significant damage to the Equipment thereby necessitating ECA to perform extensive repairs to the Equipment.

24.     ECA performed the repairs on the Equipment following Moncon's operation of the Equipment on the construction project.

25.     ECA invoiced Moncon for the rental of the Equipment and the repairs performed on the Equipment as a result of Moncon's operation of and damage to the Equipment.  *See* Exhibit B.

26.     Despite ECA's full and complete performance under the terms of the Lease Agreement, ECA is still owed significant monies from Moncon.  *See* Exhibit B.

27.     ECA has demanded that Moncon pay the outstanding amounts due and owed, but Moncon has neglected, failed and refused to pay.

28.     Moncon's failure and refusal to pay pursuant to the terms of the parties' Lease Agreement constitutes a breach of contract on the part of Moncon.

4

29.     Further, pursuant to Paragraph 3 of the Lease Agreement, Moncon agreed to pay, as a late charge, an amount equal to one and a half percent (1.5%) per month for all rental payments past due in excess of thirty (30) days.  *See* Exhibit A.

30.     Pursuant to Paragraph 11 of the Lease Agreement, Moncon agreed to pay any and all losses, claims, demands, costs and expenses (including legal expenses) of every kind and nature arising out of or connected with the use of the Equipment.  *See* Exhibit A.

31.     As a result of Moncon's breach of contract, ECA has been damaged.

WHEREFORE, Plaintiff, ECA, demands judgment in its favor and against Defendant, Moncon, in the amount of $294,487.87, plus service charges, attorneys' fees, interest and costs of this action.

## COUNT II
## QUANTUM MERUIT (IN THE ALTERNATIVE)
### (ECA v. Moncon)

32.     In the alternative, to the extent it is determines the parties do not have a valid and enforceable contract, ECA brings a cause of action of quantum meruit against Moncon.

33.     ECA furnished the Equipment with the knowledge and approval of Moncon.

34.     ECA has not been paid a fair and reasonable value for the Equipment supplied by ECA to Moncon.

35.     ECA is owed payment for the fair and reasonable value of the services rendered and equipment furnished.

36.     It is improper for Moncon to retain the benefit of the aforementioned services rendered and equipment furnished by ECA without full payment to ECA.

37.     Moncon has been unjustly enriched by ECA.

CLARKHILL\70503\464392\273374560.v2-10/3/23

Case 2:23-cv-01943-NR   Document 1-2   Filed 11/09/23   Page 9 of 34

38.     Pursuant to the theory of quantum meruit, Moncon is obligated to ECA for the outstanding fair and reasonable value of services and equipment provided to Moncon.

WHEREFORE, ECA demands judgment in its favor and against Defendant, Moncon, in an amount in excess of the jurisdictional limits for arbitration, plus interest and costs.

## COUNT III
## BREACH OF CONTRACT
### (ECA v. Insurer Defendants)

39.     The averments contained in the above Paragraphs are incorporated herein by reference as if set forth in full.

40.     Accident Fund Insurance Co. of America, New York State Insurance Fund and Aspen American Insurance Company (collectively, the "Insurer Defendants") entered into an insurance contract with Moncon (the "Policy") in which the Insurer Defendants agreed to insure the named insured, Moncon, for damages arising from claims against Moncon – like that set forth in this Complaint. *See* Exhibit A.

41.     Further, upon information and belief, the Insurer Defendants issued policies wherein ECA was a "Loss Payee" for the Equipment. *See* Exhibit A, Certificate of Liability.

42.     Upon information and belief, the applicable Policy covers certain enumerated damages or losses in connection with Moncon's business.

43.     Upon information and belief, the damage to the Equipment falls within the scope of the Policy[1] and, therefore, the Insurer Defendants owe a duty cover the damages or losses to ECA.

---

[1] This claim is stated upon information and belief until such time that ECA can obtain a copy of the applicable Policy and can assess the contours of the Policy.

6

44.     Upon information and belief, the Insurer Defendants and Moncon intended for third-party recipients, including ECA, to benefit from the applicable Policy to the extent Moncon caused the damage or loss.

45.     As a result, ECA was an actual beneficiary and/or intended third-party beneficiaries of the applicable Policy.

89.     ECA submitted a claim to the Insurer Defendants in connection with the damage to the Equipment.

90.     The Insurer Defendants breached the applicable Policy by refusing to acknowledge the claim and/or cover the losses and damages arising from Moncon causing damage to the Equipment as set forth herein.

91.     As a direct and proximate result of the Insurer Defendants' material breach of the applicable Policy, ECA has incurred economic damage as set forth more specifically herein.

WHEREFORE, ECA respectfully request that this Court enter judgment in its favor and against the Insurer Defendants for damages together with interest, costs of action and such other relief deemed just and proper.

## COUNT IV
## DECLARATORY JUDGMENT
### (ECA v. Insurer Defendants)

46.     The averments contained in the above Paragraphs are incorporated herein by reference as if set forth in full.

47.     ECA seeks relief in the nature of a declaratory judgment.

48.     ECA's interest in this matter is direct, substantial and present.

49.     An actual controversy exists which threatens ECA's legal rights.

7

50.    ECA is without a copy of the applicable Policy to understand the contours of its legal rights.

51.    Upon information and belief, the Insurer Defendants are obligated under the Policy[2] to appear to defend and indemnify ECA and/or pay for the full amount of ECA's claim associated with the damage to the Equipment.

52.    ECA has requested that the Insurer Defendants acknowledge, indemnify and/or tender proceeds to ECA for the claims associated with the damage to the Equipment in accordance with the applicable Policy and applicable law.

53.    The Insurer Defendants failed to abide by its obligations under the Policy for this insurable claim and ECA seeks a declaratory judgment that the Insurer Defendants are obligated under the Policy and applicable law to appear to pay for the full amount of ECA's claim associated with the damage to the Equipment.

WHEREFORE, ECA respectfully request that this Court enter judgment in its favor and against Defendants for damages together with interest, costs of action and such other relief deemed just and proper.

---

[2] This claim is stated upon information and belief until such time that ECA can obtain a copy of the applicable Policy and can assess the contours of the Policy.

CLARKHILL\70503\464392\273374560.v2-10/3/23

Respectfully submitted,

CLARK HILL PLC

Danny P. Cerrone, Jr., Esquire
Pa. I.D. No. 201091
Stephen M. Wolf, Esquire
Pa. I.D. No. 321070

One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
412-394-7711

*Attorneys for Plaintiff,*
*Equipment Corporation of America*

9



# EQUIPMENT CORPORATION OF AMERICA
## LEASE AGREEMENT
1000 Station Street, P.O. Box 306, Coraopolis, Pennsylvania 15108

EQUIPMENT CORPORATION OF AMERICA ("LESSOR") hereby leases to
__Moncon, Inc. ,13 Fullerton, Ave., Yonkers, NY. 10704__ ("Lessee")
for the minimum term of __month__ at a rental of $__34,650.00__*per __month,__ payable in advance to Lessor at
its address set forth above, and subject to the terms and conditions herein set forth, the equipment
described in the Schedule below, which together with all replacement parts, accessories and additions
thereto is herein collectively referred to as the "Equipment":

## SCHEDULE

| Index No. | Qty | Description | Model | Serial # | Repl. Value |
|---|---|---|---|---|---|
| DC15-763041 | 1 | BAUER DRILL RIG | BG15H | 5255 | $741,000.00 |
| DCKD-763042 | 1 | BAUER KDK ROTARY | 150 SL | 3872 | $210,200.00 |
| DCBK-761898 | 1 | BAUER KELLY BAR | 170/343/3/21 | 6296 | $81,490.00 |

*The foregoing rental does not include sales, use or similar tax, which shall
be added to each installment of rental and paid therewith by Lessee and
subject to the terms herein, Lessee shall timely pay all costs and expenses
related to the possession, registration, licensing, transportation,
maintenance, repair, storage, use or operation of the Equipment and pay all
assessments, taxes or public charges which may be levied on the
Equipment.

Equipment to be made available by Lessor at: __ECA Philadelphia, 1 Merion Terrace, Aldan, Pa. 19018__.

Equipment to be picked up by Lessee or Customer Arranged (Lessee's agent or contractor).

Destination __New York, NY.__ .

Lessor to make Equipment available on or about _____ __January 13,2023__ _____ .

Lessee to return equipment to:_____ __ECA Philadelphia__ _____ .

January 2022

**EXHIBIT**

__A__

ALL-STATE LEGAL®

ecanet.com



Lessor's Representative:

Name:  ____Michael Langan _____

Email:  ___mlangan@ecanet.com __

Lessee's Representative:

Name:  Rory Braiden _____

Email:  RBraiden@monconinc.com ___

Phone:  917-7806433 _____

    The Equipment shall only be used at the Destination for foundation and contracting work there being performed by Lessee.  Lessee shall return the Equipment to a location selected by Lessor at the end of the term of the Lease Agreement.

    This Lease Agreement, together with the terms and conditions attached hereto, is valid and binding upon the parties upon acceptance by signature of an authorized officer or branch manager of the Lessor.

    IN WITNESS WHEREOF, the parties have executed this Lease Agreement this __11th___ day of _____January_____, __2023___.

EQUIPMENT CORPORATION OF AMERICA

(LESSOR)

By:  _____Richard Anderson_____
Name:  _____Richard Anderson_____
Its:  _____ECA PHL Branch Mgr._____

Please sign and return to:

Name:  __Bonnie Host_____

Email:  ___bhost@ecanet.com_____

_____

(LESSEE)

By:  Rory Braiden_____
Name:  Rory Braiden_____
Its:  Operations Manager_____

_____ Individual
_____ Partnership
__x__ Corporation

State of _New York_____



# EQUIPMENT CORPORATION OF AMERICA
## TERMS AND CONDITIONS

1.   LEASE TERM.  The lease rental term shall begin when the Equipment is made available by Lessor for pick up by Lessee or Lessee's agent or contractor (e.g., a carrier) (regardless of when the Lease Agreement is signed) and shall end when the Equipment is returned in such condition as specified in this Lease Agreement.

2.   FREIGHT; FREIGHT CHARGES.  Lessor will make the Equipment available at the location set forth on the first page of this Lease Agreement.  Lessee shall be solely responsible for delivery and transportation of such Equipment, including transportation of the Equipment from the applicable location to the Destination.  Lessee shall pay any and all freight, handling and similar charges incurred in connection with this Lease Agreement, including without limitation all charges relating to the delivery and return of the Equipment.

3.   RENTAL.  Unless set forth on Exhibit A (Rent Charges), as prepared by Lessor, and attached hereto, the rent charged under this Lease Agreement is based on an eight (8) hour day, forty (40) hours per week, or one hundred sixty (160) hours per month.  For purposes of this Lease Agreement, a month is considered to be 28 consecutive days, beginning on the day the Equipment is made available by the Lessor for pick up by Lessee or Lessee's agent or contractor.  If the Equipment is rented by the day, the rate for overtime is one-eighth (1/8th) of the daily rate for each hour in excess of eight (8).  If it is rented by the week, the rate for overtime is one fortieth (1/40th) of the weekly rate for each hour in excess of forty (40) hours.  If it is rented by the month, the overtime rate is one-one sixtieth (1/160th) of the monthly rate for each hour in excess of one hundred sixty (160) hours.  The Lessee agrees to notify Lessor in writing of any increase in working schedule and permit Lessor, at any and all times, to inspect job time cards and records to determine additional rental charges.  The rental charges do not include charges for an operator, supervisor, mechanic or oiler, or for fuel, oil or other lubricants, or for repairs or maintenance, the provision for all of which is the sole responsibility of Lessee.

4.   LEASE TERMINATION; UNCONDITIONAL OBLIGATIONS.  This Lease Agreement cannot be canceled or terminated except by Lessor. Lessee agrees that Lessee's obligation to pay all rental charges and pay and perform all other obligations shall be absolute, irrevocable, unconditional and independent and shall be paid or performed without abatement, deduction or offset of any kind provided, however, Lessee's obligations to pay rental charges may be terminated by Lessee if the Equipment is inoperable (not due to the action or inaction of the Lessee).  Lessor shall not be responsible to Lessee or anyone claiming through Lessee for any damages, direct, consequential, or otherwise, resulting from the delivery, installation, use, operation, performance or condition of any Equipment, or any delay or failure by Lessor in delivering and/or installing any Equipment or performing any service for Lessee.

5.   CONDITION AND OPERATION OF EQUIPMENT.  Failure of Lessee to object in writing to the condition of the Equipment within three (3) days after commissioning of the Equipment shall constitute Lessee's acknowledgement that the Equipment has been accepted and found to be in good, safe and operable condition.  In the event of Lessee's written objections within the 3-day period, Lessor shall, at its option, and as Lessee' sole remedy, either place the Equipment in good, safe, operable condition within a reasonable time or shall cancel this Lease Agreement by written notice to Lessee.

Lessee, its employees and/or its agents will: (a) operate the Equipment in a professional manner; (b) use only properly trained, qualified, experienced and licensed personnel to operate the Equipment; (c) operate the Equipment safely and properly; and (d) operate the Equipment in accordance with industry standards and all applicable laws, regulations and/or ordinances.



The Equipment shall only be used at the Destination and the Lessee shall not move the Equipment to any other location without the Lessor's prior written consent.

6.   DISCLAIMER OF WARRANTIES. LESSEE ACKNOWLEDGES THAT: (i) THE EQUIPMENT IS A SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY LESSEE; (ii) LESSOR IS NOT A MANUFACTURER OF PROPERTY OF SUCH KIND; (iii) THE MANUFACTURER OF THE EQUIPMENT IS NOT AN AGENT OF LESSOR OR AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE AGREEMENT; AND (iv) LESSOR HAS NOT MADE AND DOES NOT HEREBY MAKE, AND EXPRESSLY WAIVES, ANY WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE EQUIPMENT.

7.   LESSEE'S DUTY TO MAINTAIN AND REPAIR; RETURN OF EQUIPMENT.  Lessee shall not alter, disfigure or modify the Equipment.  At all times during the lease term, Lessee, at Lessee' sole cost and expense, shall maintain the Equipment in as good condition as delivered by Lessor to Lessee, ordinary wear and tear excepted (incident to normal and intended use in the hands of competent operators and subject to this Section), and Lessee will perform routine maintenance and inspection at proper times as prescribed by manufacturer and/or Lessor and that shall include, but shall not be limited to, specific instructions provided by manufacturer and/or Lessor.

Should Lessee return any item of Equipment in a condition (regardless of the cause of condition) less than that condition as delivered by Lessor to Lessee (ordinary wear and tear excepted incident to normal and intended use in the hands of competent operators and subject to this Section), it is agreed that the rental of such Equipment will continue on the same terms and conditions until such Equipment is in the condition as delivered by Lessor to Lessee and available to furnish to another lessee, as determined by Lessor in its discretion. The Lessee agrees to, at all times during the lease term, comply with and conform to all municipal, state and federal laws, regulations and ordinances relating to the possession, transportation, maintenance, repair, use and operation of the Equipment, including but not limited to, all OSHA laws and regulations and those relating to the disposition of oil or other waste products.  Lessor shall at all times be afforded access to the Equipment for the purpose of inspecting the Equipment or observing the use or operation of the Equipment.

Lessee shall give Lessor not less than ten (10) days written notice before disassembling, returning, or otherwise moving the Equipment.  Lessor shall have the right to perform a complete off hire inspection of the Equipment before it is dissembled, returned, or otherwise moved from the Destination.

8. PREVENTIVE MAINTENANCE.  Without limiting Lessee's duties set forth in this Lease Agreement, with respect to Equipment which is either tracked or crawler equipment, Lessor shall change that Equipment's oils and filters and shall replace that Equipment's wire ropes in accordance with the manufacturer's maintenance schedule. Further, the Lessor shall replace those wire ropes which are damaged as the result of ordinary wear and tear.  The maintenance oil and filter changes and wire rope replacement shall be performed at no charge to Lessee except for wire rope replacement required for reason other than damage due to ordinary wear and tear, provided, however, Lessee will pay Lessor for a service technician's travel time or expense when the service technician is required to travel more than 200 miles from a Lessor facility, for any service of any kind performed by Lessor's service technician on holidays or weekends (and at premium overtime rates), and for stand-by time incurred by the service technician as the result of the unavailability of the Equipment or site access.  Oil and other waste materials will be disposed of by Lessee in accordance with all applicable laws and regulations.  Lessee shall report to the Lessor, on a weekly basis, the Equipment's engine hour reading.  Following each service performed by Lessor, Lessor will



provide to Lessee a report which identifies the repairs required to be performed by Lessee pursuant to this Lease Agreement, which will be the responsibility of the Lessee pursuant to the terms of this Lease Agreement.

9.   INSURANCE. Lessee, at its expense, shall keep the Equipment insured against all risk of loss or physical damage (including comprehensive boiler and machinery coverage and earthquake and flood insurance) for the full replacement value of the Equipment. In addition, Lessee shall cause any agent or contractor (e.g., a carrier) engaged by Lessee to transport the Equipment to keep the Equipment insured against all risk of loss or physical damage (including comprehensive boiler and machinery coverage and earthquake and flood insurance) for the full replacement value of the Equipment.  Lessee shall further provide and maintain comprehensive public liability insurance against claims for bodily injury, death and/or property damage arising out of the use, ownership, possession, operation or condition of the Equipment, together with such other insurance as may be required by law or reasonably requested by Lessor. All insurance shall name both Lessor and Lessee as insured parties and shall be in form and amount and with insurers satisfactory to Lessor, in Lessor's sole discretion, and Lessee shall furnish to Lessor certified copies or certificates of the policies of insurance prior to delivery of the Equipment and each renewal of these policies. Each insurer must agree, by endorsement upon the policy or policies issued by it, that it will give Lessor not less than thirty (30) days written notice before such policy or policies are canceled or altered, and, under the physical damage insurance, (a) that losses shall be payable solely to Lessor, and (b) that no act or omission of Lessee or any of its officers, agents, employees or representatives shall affect the obligation of the insurer to pay the full amount of any loss, for any claim involving damages to the Equipment in excess of $50,000.00. Lessee hereby irrevocably authorizes Lessor to make, settle and adjust claims under such policy or policies of physical damage insurance and to endorse the name of Lessee on any check or other item of payment for the proceeds under such insurance; it being understood, however, that unless otherwise directed in writing by Lessor, Lessee shall make and file timely all claims under such policy or policies, and unless Lessee is then in default, Lessee may, with the prior written approval of Lessor (which will not be unreasonably withheld) settle and adjust all such claims.  All such insurance shall be primary to any insurance carried by Lessor and shall include a waiver of subrogation in Lessor's favor.

10. DAMAGE OR LOSS OF EQUIPMENT.  The term "Event of Loss" shall mean any of the following events with respect to any item of the Equipment: (a) the actual or constructive total loss of such Equipment; (b) the loss, theft, or destruction of such Equipment or damage to such Equipment to such extent as shall make repair thereof uneconomical or shall render such Equipment permanently unfit for normal use for any reason; or (c) the condemnation, confiscation, requisition, seizure, forfeiture or other taking of title to or use of such Equipment. Except as expressly hereinafter provided, the occurrence of any Event of Loss or other damage to or deprivation of use of any Equipment shall not reduce or impair any obligation of Lessee, and, without limiting the foregoing, shall not result in any abatement or reduction in rentals whatsoever. Lessee hereby assumes and shall bear, from the time of delivery to Lessee (i.e., the date of pick up of the Equipment at the applicable location) until expiration or termination of the lease term and return of the Equipment to Lessor, the entire risk of any Event of Loss or any other damage to or deprivation of use of the Equipment, howsoever occasioned. Lessee agrees to notify Lessor immediately of any accident or incident involving the Equipment or any accident or incident causing injury, death or property damage that is related to or caused by the use of the Equipment.  Lessee further agrees to provide to Lessor upon receipt by Lessee, any report related to any accident or incident or the investigation of any accident or investigation.

11. INDEMNIFY.   The Lessee shall indemnify the Lessor (and Lessor's affiliates and its and their employees, officers, directors, agents and successors and assigns) against any and all losses, damages, injuries, claims, demands, costs and expenses (including legal expense) of every kind and nature ("Losses"), arising out of or connected with the use, condition (including without limitation, any defect



whether or not discoverable by Lessor or Lessee, any negligence of Lessor whether by commission or omission, and any strict liability of Lessor), possession, storage, transportation, maintenance, repair or operation of the Equipment leased by the Lessee, except Losses arising from the sole negligence of Lessor.

12. COMPLIANCE WITH LAWS.  The Lessee agrees to, at all times during the lease term, comply with and conform to all municipal, state and federal laws, regulations and ordinances relating to the possession, transportation, maintenance, repair, use and operation of the Equipment, including but not limited to, all OSHA laws and regulations.

13. LATE CHARGE.  The Lessee shall make all payments  monthly in advance, at the office of Equipment Corporation of America, 1000 Station Street, P.O. Box 306, Coraopolis, Pennsylvania, 15108.  To the extent permitted by law, Lessee will pay, on demand as a late charge, an amount equal to one and a half percent (1.5%) per month or fraction thereof of all rental payments past due in excess of thirty (30) days.

14. LANDLORD'S RELEASE. The Lessee further contracts and agrees to furnish the Lessor with an executed Landlord's Release, in form as acceptable to Lessor, signed by the applicable landlord, if any of the Equipment is to be used on property rented by Lessee; or if the same is required for the protection of the Lessor by reason of any other fact, circumstance, law and/or custom, as determined by Lessor.

15. LESSEE'S DEFAULT.  Should the Lessee fail to make any payment when due or fail to maintain or return the Equipment as provided in this Lease Agreement, or violate any provisions of this Lease Agreement or become bankrupt or should a receiver, or assignee be appointed for the Lessee's business, Lessor may, at its option, and without waiving any remedy it may have at law or in equity, immediately terminate this Lease Agreement, take possession of the Equipment without becoming liable for trespassing, and recover all rental charges  and full damages for any injury to and all expenses incurred in repossessing the Equipment, and Lessor shall retain any and all rights and remedies available to Lessor at law and/or in equity.

16. NON WAIVER OF LESSOR'S REMEDY.  Lessor's failure at any time to require strict performance by Lessee of any provision of this Lease Agreement shall not waive or diminish Lessor's rights to demand strict performance of this Lease Agreement or of any other provision. None of the provisions of this Lease Agreement shall be held to have been waived by any act or knowledge of Lessor, but only by a written instrument executed by Lessor and delivered to Lessee. Waiver of any default shall not be a waiver of any other or subsequent default.

17. LESSOR'S LIABILITY.  In no event shall Lessor be held responsible for injury, delays or damage resulting by reason of the use, possession, storage, operation, transportation, maintenance or condition of said Equipment, or by reason of delays on the part of railroads or trucking companies in making delivery or loss or damage to Equipment in transit, or from strikes or other contingencies beyond its control.  In no event whatsoever shall Lessor's liability under or in connection with this Lease Agreement exceed in the aggregate the sum of the rental amounts received by Lessor from Lessee hereunder.

18. NOTICE.  Any notice to Lessor hereunder shall be sufficient if given personally, emailed to Lessor's identified representative with delivery receipt, or mailed, by certified mail, to Lessor at 1000 Station Street, P.O. Box 306, Coraopolis, Pennsylvania 15108. Any notice to Lessee hereunder shall be sufficient if given personally, emailed to Lessee's identified representative with delivery receipt, or mailed to Lessee at the address herein above set forth herein for Lessee.

19. SERVICE OF PROCESS; VENUE. IN ORDER TO INDUCE LESSOR TO EXECUTE THIS LEASE AGREEMENT, LESSEE HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING



DIRECTLY OR INDIRECTLY FROM THIS LEASE AGREEMENT SHALL BE LITIGATED ONLY IN COURTS (STATE OR FEDERAL) HAVING SITUS IN THE COMMONWEALTH OF PENNSYLVANIA AND THE COUNTY OF ALLEGHENY UNLESS LESSOR, IN ITS SOLE DISCRETION, WAIVES THIS PROVISION. LESSEE HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY LESSOR IN ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COMMONWEALTH OF PENNSYLVANIA, HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO LESSEE AS PROVIDED FOR IN PARAGRAPH 18 HEREOF, AND THAT SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED ON THE THIRD BUSINESS DAY AFTER THE SAME SHALL HAVE BEEN MAILED IN THIS MANNER. LESSEE WAIVES ANY CLAIM THAT ANY ACTION INSTITUTED BY LESSOR HEREUNDER IS IN AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY WAIVES TRIAL BY JURY AND ANY RIGHT OF SETOFF OR COUNTERCLAIM IN ANY ACTION BETWEEN LESSOR AND LESSEE.

20. TITLE. The Equipment is, and shall at all times remain, the property of the Lessor, and Lessee shall have no right, title or interest therein, and no right to purchase or otherwise acquire title to or ownership of any of the Equipment, except as herein set forth.  Furthermore, all accessories, parts and replacements for or which are added to or become attached to the Equipment shall immediately become the property of the Lessor and shall be deemed incorporated in the Equipment and subject to the terms of this Lease Agreement as if originally leased hereunder.  Lessee shall at all times keep the Equipment free and clear from all levies, attachments, liens, encumbrances and charges or other judicial process of every kind whatsoever, except liens or encumbrances arising through the actions or omissions of Lessor.

21. MISCELLANEOUS. This Lease Agreement, together with any addenda attached, constitute the full agreement of Lessor and Lessee. Any amendments, modifications or other changes to this Lease Agreement must be evidenced in writing signed by Lessor and Lessee. This Lease Agreement shall  be governed by the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws principles. This Lease Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and permitted assigns. This Lease Agreement shall not be assigned by Lessee without the prior written consent of Lessor, and any attempted assignment in violation of this paragraph shall be null and void.  The Equipment shall not be sublet by the Lessee, and any attempted subletting in violation of this paragraph shall be null and void.  Headings are provided for convenience only, not for interpretation of this Lease Agreement. Lessor and Lessee are independent contractors, and neither Lessee nor any operator of the Equipment shall be deemed to be the agent, servant or employee of Lessor for any reason or purpose.

[Remainder Page Blank]

Client#: 359...

*ACORD*™ **CERTIFICATE OF LIABILITY INSURANCE**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 1/11/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer any rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Eamonn O'Toole | | |
|---|---|---|---|
| Conner Strong & Buckelew | PHONE (A/C, No, Ext): 646-891-4984 | FAX (A/C, No): | |
| 32 Old Slip, Suite 32B | E-MAIL ADDRESS: eotoole@connerstrong.com | | |
| New York, NY 10005 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Accident Fund Insurance Co. of America | | 10166 |
| INSURED | INSURER B : New York State Insurance Fund | | 36102 |
| Moncon, Inc. | INSURER C : Aspen American Insurance Company | | 43460 |
| 1460 Sheridan Expressway | INSURER D : | | |
| Bronx, NY 10459 | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES** CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | FTL100002603 | 10/22/2022 | 10/22/2023 | EACH OCCURRENCE | $2,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $4,000,000 |
| | POLICY X PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $4,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | UMBRELLA LIAB X OCCUR | | | FTX100000502 | 10/22/2022 | 10/22/2023 | EACH OCCURRENCE | $3,000,000 |
| | X EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $3,000,000 |
| | DED RETENTION $ | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | Property Leased and Rented Equipment | | | IM00KU222 | 10/22/2022 | 10/22/2023 | Occ. $2,000,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
B. Coverage: Workers Compensation (NY) [For Reference Only]
Carrier: New York State Insurance Fund (NAIC 36102)
Policy #: X 2556 743-9
Policy Term: 10/01/2022 - 10/01/2023
Limits: Unlimited
(See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Equipment Corporation of America 1000 Station St., P.O. Box 306 Coraopolis, PA 15108 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *W. Michael Topmund* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)  1 of 2  The ACORD name and logo are registered marks of ACORD
#S3844351/M3801318 TE1

## DES    IPTIONS (Continued from P    1)

RE: Equipment Rental

DC15-763041 Bauer Drill Rig – Model: BG15H Serial # 5255 – Replacement Value: $741,000
DCKD-763042 Bauer KDK Rotary Model: 150 SL – Serial # 3872 – Replacement Value: $210,000
DCBK-761898 Bauer Kelly Bar Model: 170/343/3/21 – Serial # 6296 – Replacement Value: $81,490

Equipment Corporation of America is included as a Loss Payee as their interests may appear on the above referenced Property Policy if required by written contract.

| Account# 3042 | Order # 56094 | Brc 1 | Sls 117 | R E N T A L<br>I N V O I C E | Date 02-13-23 | Invoice # 10043649 | Page 1 |
|---|---|---|---|---|---|---|---|

Sold To:                 000
    MONCON, INC
    13 FULLERTON AVE

    YONKERS NY 10704

Ship To:                    # 2
    MONCON, INC
    14 5TH AVENUE

    NEW YORK                        NY 10011
    Ship Via CUSTOMER ARRANGED

| Entered By bonnieh | Customer Purchase Order 22-013 | Customer Contact RORY BRAIDEN | Ord Date 01-13-23 |
|---|---|---|---|

| Model | Serial Number | Equip ID | Customer Job # | Customer Phone # 7188061237 |
|---|---|---|---|---|

| Ord | Ship | B/O | Part Number | Description | Unit Price | UM | Extended |
|---|---|---|---|---|---|---|---|
| | 1 | | Id# DC15-763041<br>Model-BG15H<br>BAUER BG15H MOBILE DRILL RIG | FROM: 02-10-23  THRU: 03-09-23  28  Days<br>Serial#-5255 | | | 34,650.00 |
| | 1 | | Id# DCBK-761898<br>Model-170/343/3/21<br>KELLY BAR 170/343/3/21 BAUER | Included with  DC15-763041<br>Serial#-6292 | | | |
| | 1 | | Id# DCKD-763042<br>Model-KDK150<br>BAUER KDK 150 SL ROTARY | Included with  DC15-763041<br>Serial#-3872 | | | |

                        Sub Total                 34,650.00

        NY          NEW YORK SALES TAX                3,075.19



                                                    3101)

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

| | Total Invoice<br>Due By:<br>02/13/23 | 37,725.19 |
|---|---|---|

EXHIBIT

B

| Account# 3042 | Order # 56094 | Brc 1 | Sls 117 | R E N T A L I N V O I C E | Date 03-10-23 | Invoice # 10043826 | Page 1 |
|---|---|---|---|---|---|---|---|

Sold To:                    000
            MONCON, INC
            13 FULLERTON AVE

            YONKERS NY 10704

Ship To:
MONCON, INC                        #    3
14 5TH AVENUE

NEW YORK                           NY 10011
Ship Via CUSTOMER ARRANGED

| Entered By bonnieh | Customer Purchase Order 22-013 | | Customer Contact RORY BRAIDEN | Ord Date 01-13-23 |
|---|---|---|---|---|
| Model | Serial Number | Equip ID | Customer Job # | Customer Phone # 7188061237 |

| Ord | Ship | B/O | Part Number | Description | Unit Price | UM | Extended |
|---|---|---|---|---|---|---|---|
| | 1 | | Id# DC15-763041 | FROM: 03-10-23  THRU: 04-06-23  28  Days | | | |
| | | | Model-BG15H | Serial#-5255 | | | |
| | | | BAUER BG15H MOBILE DRILL RIG | | | | 34,650.00 |
| | 1 | | Id# DCBK-761898 | Included with  DC15-763041 | | | |
| | | | Model-170/343/3/21 | Serial#-6292 | | | |
| | | | KELLY BAR 170/343/3/21 BAUER | | | | |
| | 1 | | Id# DCKD-763042 | Included with  DC15-763041 | | | |
| | | | Model-KDK150 | Serial#-3872 | | | |
| | | | BAUER KDK 150 SL ROTARY | | | | |

Sub Total                                    34,650.00

NY          NEW YORK SALES TAX                3,075.19

*3rd Month Rental*

*31011*

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

Total Invoice
Due By:
03/10/23

| 37,725.19 |
|---|

| Account# 3042 | Order # 56908 | Brc 1 | Sls 117 |
|---|---|---|---|

I N V O I C E

| Date 03-31-23 | Invoice # 10043987 | Page 1 |
|---|---|---|

Sold To:                              000
   MONCON, INC
   13 FULLERTON AVE

   YONKERS NY 10704

Ship To:
MONCON, INC
C/O ECA PHILADELPHIA
1 MERION TERRACE

ALDAN                              PA 19018
Ship Via

| Entered By bonnieh | Customer Purchase Order 22-013 | Customer Contact RORY BRAIDEN | Ord Date 03-31-23 |
|---|---|---|---|

| Model | Serial Number | Equip ID | Customer Job # | Customer Phone # 7188061237 |
|---|---|---|---|---|

| Ord | Ship | B/O | Part Number | Description | Unit Price | UM | Extended |
|---|---|---|---|---|---|---|---|
| | 1 | | | BAUER BG15H DRILL RIG RENTAL | 34,650.00 | | 34,650.00 |
| | | | | RENTAL PERIOD FROM:03-31-23 | | | |
| | | | | THRU:4-28-23 | | | |
| | | | | INCLUDES: | | | |
| | | | | BAUER BG15H MOBILE DRILL RIG | | | |
| | | | | DC15-763041 S/N#5255 | | | |
| | | | | BAUER KELLY BAR MODEL-170/343/3/21 | | | |
| | | | | DCBK-761898 S/N#6292 | | | |
| | | | | BAUER KDK 150 SL ROTARY DCKD-763042 | | | |
| | | | | S/N#3872 | | | |
| | | | | THIS EQUIPMENT WILL REMAIN ON RENTAL | | | |
| | | | | STATUS WHILE EQUIPMENT IS BEING | | | |
| | | | | EVALUATED AND REPAIRS BEING MADE TO | | | |
| | | | | DAMAGES WHICH OCCURRED WHILE ON NEW | | | |
| | | | | YORK JOB SITE. | | | |

                             Sub Total                              34,650.00

   PA          PENNSYLVANIA SALES TAX                              2,079.00

*1260-0*

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

| Total Invoice Due By: 03-31-23 | 36,729.00 |
|---|---|

| Account# | Order # | Brc | Sls |
|----------|---------|-----|-----|
| 3042 | 56977 | 1 | 117 |

I N V O I C E

| Date | Invoice # | Page |
|------|-----------|------|
| 04-05-23 | 10044045 | 1 |

Sold To:                    000

    MONCON, INC
    13 FULLERTON AVE

    YONKERS NY 10704

Ship To:
MONCON, INC
C/O ECA PHILADELPHIA
1 MERION TERRACE

ALDAN                    PA 19018
Ship Via

| Entered By | Customer Purchase Order | Customer Contact | Ord Date |
|------------|------------------------|------------------|----------|
| bonnieh | 22-013 | | 04-05-23 |

| Model | Serial Number | Equip ID | Customer Job # | Customer Phone # |
|-------|---------------|----------|----------------|------------------|
| | | | | 7188061237 |

| Ord | Ship | B/O | Part Number | Description | Unit Price | UM | Extended |
|-----|------|-----|-------------|-------------|------------|-----|----------|
| | 1 | | | BAUER BG15H DRILL RIG RENTAL | 34,650.00 | | 34,650.00 |

RENTAL PERIOD FROM: 04-29-23 THRU
05-27-23
INCLUDES:
BAUER BG15H MOBILE DRILL RIG
DC15-763041  S/N#5255
BAUER KELLY BAR MODEL-170/343/3/21
DCBK-761898 S/N#6292
BAUER KDK 150 SL ROTARY
DCKD-763042 S/N#3872
DUE TO EXTREME DAMAGE TO THE KDK
ROTARY, SERVICE EXTPERTS HAVE
DETERMINED THAT IT WILL NEED
EXTENSIVE REPAIRS WHICH IS EXPECTED
TO TAKE TILL ATLEAST THE END OF MAY
TO COMPLETE.

|  |  |
|--|--|
| Sub Total | 34,650.00 |

PA        PENNSYLVANIA SALES TAX                    2,079.00

*1260-0*

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

| Total Invoice Due By: 04/05/23 | 36,729.00 |
|--------------------------------|-----------|

| Account# 3042 | Work Ord 15421 | Br 1 | Sls 313 | W O R K   O R D E R   I N V O I C E | Date 03-31-23 | Invoice # 10043995 | Page 1 |
|---|---|---|---|---|---|---|---|

Sold To:                     000                    Ship To:
           MONCON, INC                              MONCON, INC
           13 FULLERTON AVE                         1 MERION TERRACE

           YONKERS              NY 10704    ALDAN                    PA 19018
                                           Ship Via: 4121-1

| Purchase order BG15 5255 | Date 03-27-23 | Job Number | Job Contact CHAD |
|---|---|---|---|

Seg# 000  Mfr:BAU   Model:170/343/3/21  S/N:6292          Meter:        0
                                              Equip ID:DCBK-761898

Received the bar and completed an in depth inspection on all three
stages

- Tested bar to check functionality of the bar, took it to the
pressure washer and cleaned the outer stage and the box in order
to unlock each section. The bar was then taken apart in order to
inspect each individual stage.

- Each stage was cleaned individually with the pressure washer in
order to remove any remaining foreign debris and grout. What could
not be removed with the pressure washer was removed with the
needle scaler.

- Each stage was inspected individually.

- A dye penetrating test to check for cracks in the outer stage
was performed.

- Torched all bolts off of the top of the kelly because they were
non OEM bolts and could not be removed through conventional
means.

- Brought all three stages in to the weld shop

- All kelly locks on all three stages needed to be built up back

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING              | Continued |
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

| Account# 3042 | Work Ord 15421 | Br 1 | Sls 313 | W O R K   O R D E R<br>I N V O I C E | Date 03-31-23 | Invoice # 10043995 | Page 2 |

Sold To:                    000
        MONCON, INC
        13 FULLERTON AVE

        YONKERS            NY 10704

Ship To:
        MONCON, INC
        1 MERION TERRACE

        ALDAN                      PA 19018
        Ship Via: 4121-1

| Purchase order BG15 5255 | Date 03-27-23 | Job Number | Job Contact CHAD |

to OEM specs, fix minor cracks and the wear on the profile steel.

- Build up drive shells on the outer and second stage due to accessive wear.

- Outer and inner stage needed grout needle scaled off that the pressure washer could not remove.

- Bar was reassembled and tested.

- Bar was wire wheeled, cleaned and prepped for paint.

- Bar was painted white to match OEM factory look.

- This invoice includes the hours for two weld technicians to complete all stages of repairs.

```
  110.00   Hours            WELDING LABOR RATE   154.50      16,995.00
       1   WELDING SUPPLIES                    2,040.00       2,040.00

           Total for segment  ...........................    19,035.00
```
-------------------------------------------------------------------

```
                            HANDLING                              5.00
                            MISC. SUPPLIES                      500.00

Total parts     0.00   Total labor  16,995.00   Total misc   2,545.00
                                                 Sub Total   19,540.00
                PA          PENNSYLVANIA SALES TAX             1,172.40
```

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

Amount Due
Due By:
03/31/23

| 20,712.40 |

THANK YOU FOR YOUR BUSINESS

```
Account#  Work Ord  Br  Sls        W O R K   O R D E R        Date       Invoice #   Page
3042      15425     1   313          I N V O I C E          04-04-23   10044032    1
```

Sold To:                    000        Ship To:
         MONCON, INC                   MONCON, INC
         13 FULLERTON AVE              WORK PERFORMED AT ECA PHILADELPHIA
                                       53 MERION TERRACE
         YONKERS          NY 10704     ALDAN                    PA 19018
                                       Ship Via: 4121-1

```
Purchase order          Date       Job Number        Job Contact
BG15 5255              02-27-23                       CHAD
```

Seg# 000  Mfr:BAU   Model:BG15H        S/N:5255              Meter:         0
                                           Equip ID:DC15-763041

Machine was returned with multiple discrepencies that needed to be
addressed and repaired. The following was completed once the
machine was returned to ECA Philadelphia's yard:

- An in-depth and thorough inspection was completed due to the
damages that were visible upon the machines return.

- The KDK was removed from the machine and sent to ECA Pittsburgh
for diagnosis and repair. ( This will be billed on a separate
invoice )

- The Kelly Bar was removed from the machine and sent to our weld
shop for diagnosis and repair. ( This will be billed on a separate
invoice )

- The machine was cleaned in order to remove foreign contaminates
and allow for the inspection process.

- The following parts were damaged or broken and replaced:
15734 22mm x 60m wire rope (main winch) x 1
1074451 protection sheet x 1
861574 travel alarm x 1
857182 warning light x 1
857185 warning light x 1
392016 valave cable (for Y159) x 1

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

Continued

| Account# | Work Ord | Br | Sls | W O R K   O R D E R | Date | Invoice # | Page |
|---|---|---|---|---|---|---|---|
| 3042 | 15425 | 1 | 313 | I N V O I C E | 04-04-23 | 10044032 | 2 |

```
Sold To:              000          Ship To:
     MONCON, INC                   MONCON, INC
     13 FULLERTON AVE              WORK PERFORMED AT ECA PHILADELPHIA
                                   53 MERION TERRACE
     YONKERS          NY 10704     ALDAN               PA 19018
                                   Ship Via: 4121-1
```

| Purchase order | Date | Job Number | Job Contact |
|---|---|---|---|
| BG15 5255 | 02-27-23 | | CHAD |

```
     1061529 magnet amp x 1
     1200240 roof antenna x 1
     17204 filter x 1
     224429 return filter x 3
     357596 tank breather x 2
     55921 electrical box filter x 2
     1145529 cabin filter x 1
     904304 fuel filter x 2
     1131358 fuel filter x 1
     1120732 engine oil filter x 1
     904290 water separator x 1
     532392 air filter x 1
     532393 air filter x 1
     960706 tread x 1
     12071120 engine oil (bulk gallons) x 5
     12080624 gear oil (5 gallon pails) x 2
     1093369 tarp x 1
     700331 snap hook x 12
     1134987 rubber x 6
     903926 engine terminal screen x 1
     950160 sheet cover for buzzer x 1

     All parts replaced were function tested to ensure normal operation.
        80.00  Hours          SHOP SERVICE LABOR     142.50      11,400.00
           1   INCOMING FREIGHT CHARGES            2,500.00       2,500.00

              Total for segment  .........................      32,647.28
```

---

```
WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS
```

| Continued |
|---|

| Account# 3042 | Work Ord 15425 | Br 1 | Sls 313 | W O R K   O R D E R   I N V O I C E | Date 04-04-23 | Invoice # 10044032 | Page 3 |
|---|---|---|---|---|---|---|---|

Sold To:                    000
    MONCON, INC
    13 FULLERTON AVE

    YONKERS              NY 10704

Ship To:
MONCON, INC
WORK PERFORMED AT ECA PHILADELPHIA
53 MERION TERRACE
ALDAN                    PA 19018
Ship Via: 4121-1

| Purchase order BG15 5255 | Date 02-27-23 | Job Number | Job Contact CHAD |
|---|---|---|---|

```
                              HANDLING                         5.00
                              MISC. SUPPLIES                 500.00

Total parts   18,747.28   Total labor   11,400.00   Total misc   3,005.00
                                                Sub Total    33,152.28
                 PA         PENNSYLVANIA SALES TAX            1,989.14
```

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

Amount Due
Due By:
04/04/23

| 35,141.42 |
|---|

| Account# 3042 | Work Ord 15430 | Br 1 | Sls 313 | W O R K   O R D E R  I N V O I C E | Date 04-05-23 | Invoice # 10044043 | Page 1 |
|---|---|---|---|---|---|---|---|

Sold To:            000
    MONCON, INC
    13 FULLERTON AVE

    YONKERS            NY 10704

Ship To:
MONCON, INC
WORK PERFORMED AT ECA PITTSBURGH
1000 STATION STREET
CORAOPOLIS            PA 15108
Ship Via: 4121-1

| Purchase order BG15 5255 | Date 04-05-23 | Job Number | Job Contact CHAD GOODRICH |
|---|---|---|---|

Seg# 000   Mfr:BAU   Model:KDK150      S/N:3872            Meter:        0
                                     Equip ID:DCKD-763042

During the initial inspection of the KDK multiple discrepencies
were noted and it was decided to remove the KDK from the BG15 and
ship it to ECA Pittsburgh for complete tear down inspection. The
following was discovered and replaced during the inspection:

- New bolts, nuts, washers and o-rings were used throughout the
KDK.
- 442739 Plastic rail slides x 12
- 1176518 Pinion x 1
- 40511 cylindricl roller bearing x 1
- 241652 cylindrical roller bearing x 1
- 1083383 slewing bearing x 1
- 921280 shaft seal ring x 2
- 1147162 driving shell cpl x 3
- 1140671 guide ring x 1
- 400183 v-ring x 1
- 222797 v-ring x 1
- 1289631 filling and aerating filter x 1
- 1169577 clamp x 2
- Mulltiple seals of various sizes were replaced throughout the
KDK

All labor for this invoice includes, cleaning, removal from rig,
loading and unloading for transport, initial inspection, complete
tear down, gathering parts, complete rebuild, reattaching to BG15

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

Continued

| Account# 3042 | Work Ord 15430 | Br 1 | Sls 313 | W O R K   O R D E R<br>I N V O I C E | Date 04-05-23 | Invoice # 10044043 | Page 2 |

Sold To:               000
    MONCON, INC
    13 FULLERTON AVE

    YONKERS          NY 10704

Ship To:
MONCON, INC
WORK PERFORMED AT ECA PITTSBURGH
1000 STATION STREET
CORAOPOLIS              PA 15108
Ship Via: 4121-1

| Purchase order BG15 5255 | Date 04-05-23 | Job Number | Job Contact CHAD GOODRICH |

```
and function testing the KDK.
    138.00  Hours          SHOP SERVICE LABOR    142.50    19,665.00
        1     HOT SHOT FREIGHT TO ECA PITTSBURGH  1,400.00   1,400.00
        1     INCOMING PARTS FREIGHT              4,000.00   4,000.00
        1     MOTOR FREIGHT TO ECA PHILADELPHIA   1,400.00   1,400.00

            Total for segment   ...........................    84,141.86
------------------------------------------------------------------------
                              HANDLING                            5.00
                              MISC. SUPPLIES                     500.00

Total parts   57,676.86   Total labor    19,665.00   Total misc   7,305.00
                                             Sub Total   84,646.86
            PA          PENNSYLVANIA SALES TAX             5,078.81
```

WE REPORT TO ALL CREDIT AGENCIES AVOID BEING
REPORTED BY PAYING PROMPTLY!

THANK YOU FOR YOUR BUSINESS

Amount Due
Due By:
04/05/23

| 89,725.67 |

## VERIFICATION

The undersigned, David Hyland, is the Vice President - Operations of Equipment Corporation of America.  I have read the foregoing Complaint in Civil Action.  The statements therein are true and correct to the best of my personal knowledge, information and belief.

This statement and verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities, which provides that, if I make knowingly false averments, I may be subject to criminal penalties.

Date:  September **29**, 2023

By:_____
David Hyland
Vice President - Operations
Equipment Corporation of America

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Danny P. Cerrone, Jr., Esquire
Pa. I.D. No. 20109
CLARK HILL, PLC
301 Grant Street, 14th Floor
One Oxford Centre
Pittsburgh, PA  15219
Telephone: (412) 394-7711
Fax: (412) 394-2555